UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CRIMINAL ACTION NO. 3:11CR-79-H

UNITED STATES OF AMERICA              PLAINTIFF

V.

JAVIER JULIO ARCE
CRISTINA ARCE                   DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

On June 22, 2011, the United States indicted Javier Julio Arce on three counts, stemming from alleged violations of 8 U.S.C. §§ 1324(a) and 1324(b). Section 1324(a) prohibits any person from concealing, harboring, or shielding an illegal alien, and § 1324(b) provides for harsher punishment when an illegal alien is harbored for financial gain. The United States contends that Defendant and his wife knowingly employed an illegal alien as a live-in domestic worker for nearly twelve years, providing the alien with shelter and a small amount of monetary support in exchange for her labor. Defendant moved to dismiss the first two counts of the indictment on the grounds that the statute of limitations barred prosecution. Count 1 charges the Defendant with conspiracy to harbor an illegal alien for financial gain, and Count 2 contains the specific offense of harboring an illegal alien for financial gain. The Court is faced with two issues in relation to this motion for dismissal: (1) identifying the applicable statute of limitations and (2) assessing the amount of conduct for which Defendant can be held liable.

I.

First, charges brought under 8 U.S.C. § 1324(a) are presently governed by a ten-year statute of limitations. 18 U.S.C. § 3298. Both of the contested counts allege that the criminal

conduct began "in or about June 1994" and continued through "in or about January 2006." Defendant insists that Count 1 and Count 2 should be subject only to a five-year statute of limitations under 18 U.S.C. § 3282. If this argument prevailed, the date of the indictment would fall approximately five months outside of the time period for a valid prosecution. The Sixth Circuit has held, however, that a statute of limitations can be extended so long as the alteration occurs before the original period has run. *United States v. Knipp*, 963 F.2d 839, 843 (6th Cir. 1992). Even though extensions of the statute are generally permitted, any such extension may not violate other constitutional protections.

The Constitution's *Ex Post Facto* Clause is one such protection. It prohibits the federal government from enacting unjust or unfair retroactive laws, including the revival of a time-barred prosecution. *Stogner v. California*, 539 U.S. 607, 610, 616 (2003). Even so, the extension of an unexpired limitations period does not implicate the *Ex Post Facto* Clause because the defensive use of a statute of limitations is a mere procedural defense. *Knipp*, 963 F.2d at 843. The denial of a statute of limitations defense "has nothing to do with the internal structure of a crime or its elements," and such alterations deprive defendants of no defenses that would have been available at the commission of the crime. *Id.* "A change in the law which is procedural is not *ex post facto*, even though it may work to the disadvantage of the defendant." *United States v. Prickett*, 790 F.2d 35, 37 (6th Cir. 1986). By contrast, if Congress fails to enact an extension prior to the expiration of a particular defendant's original limitations period, prosecutors cannot indict that defendant by relying on the new statute of limitations. *Stogner*, 539 U.S. at 632-33.

On January 5, 2006, the current ten-year statute of limitations became effective,

2

supplanting the previous five-year period. 8 U.S.C. § 3298. Defendant's criminal conduct allegedly ended "in or about January 2006," indicating that the original five-year period would not have expired until January 2011. Therefore, the amended ten-year limitations period became effective well within the original five-year period in which the Defendant should have remained on notice that a prosecution might occur and might have been in effect during the commission of the alleged criminal conduct. The ten-year statute of limitations found in 18 U.S.C. § 3298 applies with no threat of an *ex post facto* violation, and thus the June 2011 indictment is valid.

II.

The Court will next consider the amount of conduct for which Defendant can be held responsible under the Indictment. The answer turns on whether either the conspiracy charge or the harboring an illegal alien for financial gain charge constitute continuing offenses. The doctrine of continuing offenses allows conduct, which would otherwise be outside of the statute of limitations, to be prosecuted for certain crimes that continue after the completion of their initial elements. *See, e.g.*, *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (1999) (kidnaping); *United States v. Bailey*, 444 U.S. 394, 413 (1980) (escaping from federal custody).

Conspiracy (Count 1) is a well recognized continuing offense, and as such all of Defendant's conduct from 1994 to 2006 can be included in this charge so long as an overt act in furtherance of the conspiracy occurred within the statute of limitations. *United States v. Jaynes*, 75 F.3d 1493, 1505-06 (10th Cir. 1996); *United States v. Edgecomb*, 910 F.2d 1309, 1311-12 (6th Cir. 1990). The applicable ten-year period reaches all of Defendant's alleged criminal conduct between June 2001 to June 2011, a time period that easily encompasses an overt act furthering the conspiracy to harbor an illegal alien. Therefore, the charge of conspiracy contained in Count

1 meets the requirements of the statute of limitations and is applicable to Defendant's conduct "in or about June 1994 and continuing through in or about January 2006."

Count 2, the harboring charge, presents a new and more difficult question; no court has determined whether harboring an illegal alien under 8 U.S.C. § 1324(a)(1)(A)(iii) is a continuing offense. Continuing offenses create a practical tension with the a statute of limitations' purpose of protecting the individual from criminal prosecutions when the basic facts have been obscured or eroded by time. *United States v. Toussie*, 397 U.S. 112, 115 (1970). To prevent the subversion of that purpose, the continuing offense label should not apply to a particular crime "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* Section 1324(a)(1)(A)(iii) provides for the prosecution of:

> Any person who . . . knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of the law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or means of transportation.

While the statute makes reference to the possibility that harboring could occur in a multitude of locations, it contains no explicit statement that the crime ought to be construed as continuing or that the crime outlives the completion of its initial elements in the context of a statute of limitations.

Since the statute lacks sufficient, explicit evidence of a continuing offense, the Court must examine the implicit nature of the prohibited conduct and decide if Congress assuredly intended harboring an illegal alien to be a continuing offense. *Toussie*, 397 U.S. at 115. Courts have determined that several other crimes established under § 1324(a) and related immigration

4

crimes are continuing offenses. *See United States v. Hernandez-Guerrero*, 633 F.3d 933, 936 (9th Cir. 2011) (holding that illegal re-entry under 8 U.S.C. § 1326 is a continuing offense); *United States v. Lopez*, 484 F.3d 1186, 1192-93 (9th Cir. 2007) (declaring that bringing in an illegal alien under 8 U.S.C. § 1324(a)(2) constitutes a continuing offense). Moreover, harboring a fugitive is considered a continuing offense for the purpose of venue selection. *United States v. Strain*, 396 F.3d 689, 697 (5th Cir. 2005). The nature of the conduct required for harboring an illegal alien is identical to the conduct necessary for harboring a fugitive. Both offenses could be completed over long periods of time, in different geographic locations, and through a multitude of overt acts.

Here, Defendant's conduct allegedly occurred over approximately twelve years and included the provision of shelter and monetary support. If no recognizable break in the harboring relationship occurred, it would be illogical to hold that a separate and complete crime of harboring arose with the completion of each overt act or on each day that the illegal alien lived with Defendant. To arrive at a sensible solution in light of possible prolonged existence of a harboring relationship, harboring an illegal alien under § 1324(a)(1)(A)(iii) must be construed as a continuing offense. Assuming that an overt act in furtherance of harboring occurred between June 2001 and June 2011, Defendant can be held liable for all of his conduct beginning "in or about June 1994 and continuing through in or about January 2006."

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Javier Julio Arce's motion to dismiss is DENIED and the Court will apply the ten-year statute of limitation consistent with this Memorandum Opinion.

This is not a final and appealable order.

cc: Counsel of Record